PATRICIA KILKENNY, Appellant, v JOHN J. KILKENNY, Respondent. [863 NYS2d 807]—

In an action for a divorce and ancillary relief, the plaintiff appeals, as limited by her brief, from stated portions of a judg-

ment of the Supreme Court, Nassau County (Gartenstein, J.H.O.), entered April 3, 2007, which, upon a decision of the same court dated November 1, 2006, made after a nonjury trial, inter alia, imposed a constructive trust on the marital residence, directed the sale of the marital residence, awarded her durational maintenance in the sum of only $200 per week from January 1, 2007 until September 1, 2007, determined that the balance of a loan taken by the defendant to finance a portion of the college education of his daughter from a prior marriage was marital debt, failed to award her any portion of the defendant's 401k, individual retirement, or cash management accounts, and did not award her an additional attorney's fee.

Ordered that the judgment is modified, on the law, on the facts, and in the exercise of discretion, (1) by deleting the provision thereof directing the sale of the marital residence, (2) by deleting the provision thereof specifying the sum of $480,678 as the net increase in the value of the marital residence to be equitably distributed and substituting therefor a provision specifying the sum of $420,139 as the net increase in the value of the marital residence to be equitably distributed, (3) by deleting the provision thereof awarding the plaintiff maintenance in the sum of $200 per week from January 1, 2007 until September 1, 2007, and substituting therefor a provision awarding the plaintiff maintenance in the sum of $200 per week, retroactive to May 2, 2005, until the earlier of February 1, 2012, the death of either party, or the remarriage of the plaintiff, (4) by adding a provision thereto awarding the plaintiff the sum of $51,654, representing 50% of the marital portion of the defendant's 401k, individual retirement, and cash management accounts, (5) by deleting the provision thereof awarding the defendant a credit equal to 50% of the reduction of the principal balance due on the mortgage loan referable to the marital residence, representing mortgage payments of principal and interest made by the defendant from May 2, 2005 until December 31, 2006, and substituting therefor a provision awarding the defendant a credit, against any obligation created by the retroactive modification of the maintenance award, for all mortgage payments of principal only and real property tax payments he made after May 2, 2005, and (6) by deleting the provision thereof specifying the sum of $69,675 as the marital debt to be paid by the parties in equal shares and substituting therefor a provision specifying the sum of $37,675 as the marital debt to be paid by the parties in equal shares; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for the determination of a method of payment and a

schedule of payment of the defendant's equitable share of marital property and the entry of an appropriate amended judgment thereafter.

The marital residence was the separate property of the wife at the time of the parties' marriage, with a stipulated fair market value of $282,500, and was encumbered by a mortgage. The parties stipulated that the fair market value of the residence at the time of trial was $700,000, and that it was encumbered with a small remaining mortgage debt.

After a nonjury trial, the Supreme Court found that the parties' conduct had transmuted that separate property into marital property. The court determined that the elements necessary to establish the existence of a constructive trust were present and, on that basis, also concluded that the marital residence was marital property, with the increase in its value over the course of the marriage subject to equitable distribution.

The increase in value of the marital residence is subject to equitable distribution, but not for the reasons articulated by the Supreme Court. A constructive trust may be imposed " '[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest' " (*Sharp v Kosmalski,* 40 NY2d 119, 121 [1976] [citations omitted]; *see A.G. Homes, LLC v Gerstein,* 52 AD3d 546 [2008]; *Osborne v Tooker,* 36 AD3d 778 [2007]). "The elements of a constructive trust are a confidential or fiduciary relationship, a promise, a transfer in reliance thereon, and unjust enrichment" (*Williams v Eason,* 49 AD3d 866, 868 [2008] [citations omitted]). The record does not support the Supreme Court's finding that all of those elements existed in this case (*see Williams v Eason,* 49 AD3d 866 [2008]; *Schwartz v Schwartz,* 36 AD3d 604 [2007]; *Doria v Masucci,* 230 AD2d 764 [1996]). Moreover, and contrary to the Supreme Court's conclusion, the marital residence is the separate property of the wife, and remained her separate property. Since that residence is the wife's separate property, and not subject to the imposition of a constructive trust, there was no authority to order its sale for the purpose of equitably distributing the proceeds.

The husband is nonetheless entitled to an equitable share in the increase in the value of the marital residence over the course of the marriage, notwithstanding that the residence is the separate property of the wife. The increase in the value of separate property remains separate property "except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse" (Domestic Relations Law § 236 [B] [1] [d] [3]; *see Price v Price,* 69 NY2d 8 [1986]), at which point the

increase in value becomes marital property, in accordance with the rule that the definition of marital property is to be broadly construed, given the principle that a marriage is an economic partnership (*see Mesholam v Mesholam,* 11 NY3d 24 [2008]; *Price v Price,* 69 NY2d 8 [1986]). The record establishes that the appreciation in the value of the marital residence was attributable to the joint efforts of the parties. The defendant is thus entitled to share equitably in that increased value (*see Michelini v Michelini,* 47 AD3d 902 [2008]; *Massimi v Massimi,* 35 AD3d 400, 402 [2006]; *Falgoust v Falgoust,* 15 AD3d 612 [2005]). Accordingly, the Supreme Court providently exercised its discretion in awarding the parties equal shares in the increase in the value of the marital residence.

The Supreme Court arrived at the amount by which the marital residence increased in value by subtracting the stipulated net value of the residence (i.e., the fair market value less the outstanding principal balance of the mortgage loan) at the time of the commencement of the marriage, or $195,346, from the stipulated net value at the time of the trial, or $676,024, to arrive at a figure of $480,678. However, the Supreme Court also determined the husband was entitled to an award of $30,269.50, representing his 50% share of the reduction in the principal of the mortgage obligation referable to the residence, until May 2, 2005, the date of the commencement of the action. That calculation was unchallenged by the wife on appeal and was correct in any event (*see O'Donnell v O'Donnell,* 41 AD3d 447 [2007]; *Massimi v Massimi,* 35 AD3d 400 [2006]; *Palumbo v Palumbo,* 10 AD3d 680 [2004]). However, if that credit for the increase in equity attributable to the payment of mortgage principal is made, that return of equity should be subtracted from the increased value of the marital residence to arrive at the net increased value. The net increase in value of the marital residence is thus $420,139, to be shared equally by the parties. The husband is consequently entitled to an award in the sum of $210,069.50 for his equitable share in the increased value of the marital residence.

The Supreme Court also determined that the husband is entitled to 50% of the reduction in the principal remaining on the mortgage debt, in order to account for the mortgage and real property tax payments he made from the commencement of the action on May 2, 2005 until the termination date of the pendente lite order on December 31, 2006. Those payments were not made with marital funds. The husband, in light of the further modification made herein to the award of maintenance, is also entitled to a credit for all of the mortgage and real prop-

erty tax payments he made pursuant to the pendente lite order (*see Grasso v Grasso,* 47 AD3d 762 [2008]). In this instance, however, the credit should be limited to the principal portion of the mortgage payments plus the real property tax payments, since the husband's mortgage interest payments have been taken into consideration in determining that aspect of the appeal related to arrears for "utility" payments.

The husband came into the marriage possessed of certain funds maintained in 401k, individual retirement, and cash management accounts (hereinafter the financial accounts). The value of those accounts at the commencement of the marriage was $147,139. During the marriage, the husband expended approximately $40,800 from those accounts for the education of one of his daughters from a prior marriage. At the time of the commencement of the action, there was $209,647 in the financial accounts. The husband's separate property interest in the financial accounts was $106,339. There was a significant reduction in the balance of those accounts by the time of trial. It is appropriate to value the accounts as of the time of the commencement of the action (*see Mesholam v Mesholam,* 11 NY3d 24 [2008]; *McSparron v McSparron,* 87 NY2d 275 [1995]). The marital portion of the accounts was $103,308. The wife is thus entitled to, and should have been is awarded, a 50% share of that sum, or $51,654.

" 'The amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its own unique facts'. 'The overriding purpose of a maintenance award is to give the spouse economic independence, and it should be awarded for a duration that would provide the recipient with enough time to become self-supporting'. 'In determining the appropriate amount and duration of maintenance, the court is required to consider, among other factors, the standard of living of the parties during the marriage and the present and future earning capacity of both parties' " (*DiBlasi v DiBlasi,* 48 AD3d 403, 404 [2008] [citations omitted], *lv denied* 10 NY3d 716 [2008], quoting *Haines v Haines,* 44 AD3d 901, 902 [2007]; *see Groesbeck v Groesbeck,* 51 AD3d 722 [2008]; *Sirgant v Sirgant,* 43 AD3d 1034 [2007]; *Walter v Walter,* 38 AD3d 763 [2007]). The Supreme Court providently exercised its discretion in determining the amount of weekly maintenance, but it improvidently exercised its discretion in limiting the duration of the award of maintenance so as to terminate on September 1, 2007. The extension of the duration of the award of maintenance should provide the wife with sufficient time to become self-supporting. Considering the wife's

education and age, the number of years she has been out of the work force raising the parties' two minor children, the standard of living of the parties during the marriage, and the present and future earning capacities of both parties, the duration of the award of maintenance should be extended to the earlier of February 1, 2012, the death of either party, or the wife's remarriage. As noted in the wife's request for maintenance, the parties' younger child will be 14 years old on that date and no longer in need of child care.

The Supreme Court also erred in determining that the $200-per-week maintenance payment should commence as of January 1, 2007. An award of maintenance is effective as of the date of application therefor (*see* Domestic Relations Law § 236 [B] [6] [a]; *see also Higgins v Higgins,* 50 AD3d 852 [2008]). The award of maintenance thus should have provided that the husband's $200-per-week obligation is effective retroactive to May 2, 2005, the date of the commencement of the action. As noted, the husband shall have an appropriate credit against the retroactive obligation created by this modification (*see Grasso v Grasso,* 47 AD3d 762 [2008]).

The wife correctly contends the amount of the unpaid balance of a loan that the husband obtained in connection with the college education of the second of his two daughters from his prior marriage, in the sum of $32,000, should not have been included in the calculation of marital debt (*cf. Grasso v Grasso,* 47 AD3d 762 [2008]). Accordingly, the marital debt to be paid by the parties in equal shares should have been reduced to $37,675.

In determining the amount of the arrears related to the husband's pendente lite obligation to pay the "utilities" for the marital residence, the Supreme Court made certain determinations with regard to the scope of that obligation and the credits to which the husband was entitled. We view the scope of the credits (*see Miller v Miller,* 25 AD3d 537 [2006]; *Ferraro v Ferraro,* 257 AD2d 598, 599 [1999]; *Verdrager v Verdrager,* 230 AD2d 786, 788 [1996]) and the obligation of the husband somewhat differently from the Supreme Court. However, when the recalculation is made there is no basis for an increase in the amount determined by the Supreme Court.

The Supreme Court appropriately determined that the wife was not entitled to a further award of an attorney's fee.

The award to the husband in the sum of $210,069.50, as his share of the increase in the value of the marital residence, is partially offset by the award to the wife of the sum of $51,654, for her share of the financial accounts. The husband is thus entitled to a net equitable distribution award in the sum of

$158,415.50, plus the sum of $30,269.50, awarded for his share of the reduction of the outstanding principal balance of the mortgage loan for the marital residence during the course of the marriage. The only significant asset possessed by the wife is the former marital residence, which, as her separate property, is not subject to an order of sale as part of the judgment of divorce. Therefore, we remit the matter to the Supreme Court, Nassau County, for the determination of a method of payment and a schedule of payment of the husband's equitable share of marital property and the entry of an appropriate amended judgment thereafter. Fisher, J.P., Covello, Angiolillo and Belen, JJ., concur.